UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JIMMY WHITE, | ) | Case No. 1:10CV1265 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| FRANK SHEWALTER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **Report and Recommendation** |
| | ) | **of Magistrate Judge** |

On June 4, 2010, Petitioner Jimmy White ("Petitioner"), through counsel, filed a petition for a writ of  habeas corpus pursuant to 28 U.S.C. §2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his trial in the Cuyahoga County, Ohio Court of Common Pleas, where he was convicted of two counts of having weapons while under disability in violation of Ohio Revised Code ("ORC") §2923.13(A)(2), with firearms specifications, ORC §2941.145.  ECF Dkt. #4-2 at 65.[1]  On July 28, 2010, Respondent Frank Shewalter ("Respondent"), Warden of Grafton Correctional Institution, where Petitioner is incarcerated, filed an answer/return of writ. ECF Dkt. #4. On October 8, 2010, Petitioner, through counsel, filed a traverse. ECF Dkt. #7.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

## I.    SYNOPSIS OF THE FACTS

The Eighth District Court of Appeals of Ohio set forth the relevant facts and procedural history of this case on direct appeal.  ECF Dkt. #4-2 at 110-121.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999):

---

[1]Page numbers refer to "Page ID" numbers in the electronic filing system.

{¶ 2} The indictment charged that on two separate occasions, White discharged a firearm into a house that had a number of different occupants present. Testimony showed that these victims had seen a group of young men who lived on the street. Among them was White's stepson. The young men were cleaning out the bed of a pickup truck and throwing trash on the ground. A number of people were on the porch of the house, and one of them told the young men to pick up their trash. The young men responded by name-calling and throwing empty bottles at the house. A fight broke out with as many as 30 people involved, including White. The police were called and restored order by telling the victims to go inside their house. After the police left, White told the victims that "I'm going to show you all how to jump somebody. You all don't know what the F you all messing with."

{¶ 3} White came back about five minutes later and, while holding a gun, stood directly in front of the victims' house and said, "[w]e about to shoot this house up." White then spoke on his cell phone and a gold car soon arrived. Gunshots were fired from the gold car at the house, and three witnesses saw White holding a gun. The occupants fled inside the house for cover as between 10 and 20 shots were fired.

{¶ 4} The police responded but did not locate White. When they knocked at his door, a woman answered and appeared surprised to hear that there had been a shooting. They stopped a gold car that drove down the street, but none of the victims were able to identify any of the occupants of the gold car as having shot at them. The scientific investigation unit took pictures of the victims' house, documenting as many as 14 different entry holes in the house.

{¶ 5} The following day, some of the victims were sitting on the porch when White and his stepson walked by the house. He started to mock them and told them "it ain't over yet." A witness said that White then stepped into the street and fired a single shot at the house that passed through a second-floor bedroom.

{¶ 6} The police were called again. They knocked on White's door and a woman answered. Before the police could say anything, the woman said "he didn't shoot nobody" and "the bitch was lying." The police thought these remarks were odd because they were unprompted. White appeared with his hands up, but he was not wearing the same shirt that had been described to the police; instead, he was wearing a wrinkled shirt that he had just put on. He told the police that "I don't want any problems." The police patted him down and placed him in a police car. They later recovered the bullet from the bedroom of the victims' house.

{¶ 7} The state charged White with 10 counts of felonious assault, two counts of improperly discharging a firearm at or into a habitation, and two counts of having a weapon under disability. All of the counts contained one and three-year firearm specifications. White chose to have the disability counts tried to the court, but submitted the remaining counts to the jury. The jury returned not guilty verdicts on all submitted counts and the court found White guilty of the two disability counts, with the attendant firearm specifications.

*State v. White*, 2008 WL 5049957 at *1-2; ECF Dkt.#4-2 at 112-114.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

In its May 2007 Term, the Cuyahoga County, Ohio Grand Jury indicted Petitioner for:

ten counts of felonious assault in violation of ORC §2903.11(A)(2), with two firearm specifications accompanying each felonious assault count under ORC §2945.141 and §2945.145 (Counts 1-7, 10-12);

two counts of improperly discharging a firearm at or into a habitation or school safety zone in violation of ORC §2923.161(A)(1) with two firearm specifications accompanying each count under ORC §§2941.141 and 2945.145 (Counts 8 and 13);

two count of having a weapon while under disability in violation of ORC §2923.13(A)(3) with two accompanying firearm specifications under ORC §§2941.141 and 2941.145 (Counts 9 and 14);

*Id.* at 56-63.

The case proceeded to trial, where Petitioner elected to waive his right to a jury trial on the two counts of having weapons under a disability.  ECF Dkt. #8-1 at 269-273.  At the conclusion of the state's case, Petitioner successfully moved for a Rule 29 dismissal of the charges in Counts 5 and 7.  ECF Dkt. #8-3 at 827-833.  The jury returned not guilty verdicts on Counts 1-4, 6, 8, and 10-13, but the trial court found Petitioner guilty of  both of the weapons under disability charges with the accompanying firearms specifications in Counts 9 and 14.  ECF Dkt. 4-2 at 65.  In an entry dated December 13, 2007, the trial court sentenced Petitioner to two years in prison on Count 9 with one and three years on the firearms specification, and five years on Count 14 with one and three years on the firearms specifications, to be served consecutively.  The firearms specifications were merged, and, as a consequence, Petitioner was sentenced to an aggregate term of imprisonment of ten years. *Id.* at 66.

### B.     Direct Appeal

On December 27, 2007, Petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals for the Eighth District.  *Id.* at 67.  Petitioner raised the following assignments of error in his appellate brief:

ASSIGNMENT OF ERROR I:

THE TRIAL COURT ERRED WHEN IT RENDERED JUDGMENT FINDING DEFENDANT-APPELLANT GUILTY OF HAVING A WEAPON

> WHILE UNDER A DISABILITY, IN VIOLATION OF R.C. 2923.13A(2) WITH FIREARMS SPECIFICATIONS, PROVIDED BY R.C. 2941.141 AND 2941.145, IN CONTRADICTION OF THE JURY'S VERDICT AND AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.
>
> ASSIGNMENT OF ERROR II:
>
> THE TRIAL COURT ERRED WHEN IT SENTENCED DEFENDANT-APPELLANT TO TEN YEARS IMPRISONMENT , IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION.

*Id.* at 78.

On November 26, 2008, the Eighth District Court of Appeals affirmed the trial court's judgment of conviction and sentence.  *Id.* at 110-121.

## C.  Supreme Court of Ohio

On January 12, 2009, Petitioner, acting *pro se*, filed a notice of appeal to the Supreme Court of Ohio.  *Id.* at 122.   In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

> FIRST PROPOSITION OF LAW: THE TRIAL COURT ERRED IN ITS VERDICT AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.
>
> SECOND PROPOSITION OF LAW: THE TRIAL COURT ERRED SENTENCING THE DEFENDANT TO TEN YEARS, IN VIOLATION OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ! [SIC] SECTION ( [SIC] OF THE OHIO CONSTITUTION.

*Id.* at 130, 134.  On November 4, 2009, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  *Id.* at 143.

## D.  Application for Reopening of Appeal

On January 30, 2009, while his Ohio Supreme Court appeal was pending, Petitioner, through counsel, filed an application for reopening of appeal pursuant to App.R.26(B).  *Id.* at 144-155.  In the application, Petitioner raised the following errors on the part of his prior appellate counsel:

> APPELLATE COUNSEL FAILED TO ARGUE THAT A CASE WHERE SOME COUNTS WERE TRIED TO THE JURY AND OTHERS WERE TRIED TO THE BENCH, THE TRIAL COURT'S DISCUSSING THE JURY'S VERDICT WITH THE JURY FOREPERSON BEFORE THE COURT REACHED ITS VERDICT IN THOSE COUNTS TRIED TO THE BENCH WAS PRESUMPTIVELY

PREJUDICIAL AND REQUIRED REVERSAL OF MR. WHITE'S CONVICTIONS.

APPELLATE COUNSEL WAS INEFFECTIVE BY FAILING TO RAISE THE ISSUE THAT THE INDICTMENT WAS STRUCTURALLY DEFECTIVE FOR FAILING TO INCLUDE AN IMPORTANT ELEMENT OF THE CRIME OF HAVING A WEAPON UNDER DISABILITY.

*Id.* at 148, 152. On August 10, 2009, the Eight District Court of Appeals denied Petitioner's App.R.

26(B) motion. *Id.* at 168-180.

**E.   Supreme Court of Ohio**

On September 24, 2009, Petitioner, through counsel, filed a notice of appeal to the Supreme

Court of Ohio. *Id.* at 182-183.  In his memorandum in support of jurisdiction, Petitioner raised the

following propositions of law:

PROPOSITION OF LAW I: IN A MULTIPLE COUNT CASE WHERE THE DEFENDANT ELECTS TO BIFURCATE THE COUNTS SO THAT SOME ARE TRIED TO THE JURY AND OTHERS TO THE BENCH, IT IS IMPROPER FOR THE TRIAL COURT AS FACTFINDER ON THE BENCH TRIED COUNTS TO DISCUSS THE JURY'S VERDICT WITH THE JURY FOREPERSON BEFORE THE COURT REACHES ITS VERDICT.

PROPOSITION OF LAW II: AN INDICTMENT CHARGING HAVING A WEAPON WHILE UNDER A DISABILITY IS STRUCTURALLY DEFECTIVE WHERE IT FAILS TO INCLUDE AN IMPORTANT ELEMENT OF THE CRIME.

*Id.* at 185.  On November 18, 2009, the Supreme Court of Ohio dismissed the appeal as not

involving any substantial constitutional question.  *Id.* at 143.  Petitioner filed an application for

reconsideration of the Ohio Supreme Court's ruling,  *Id.* at 217, which was denied on January 27,

2010. *Id.* at 220.

**III.   28 U.S.C. § 2254 PETITION**

On June 4, 2010, Petitioner, through counsel, filed the instant petition for a writ of habeas

corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

GROUND ONE:    In a case where some counts were tried to a jury and others to the bench, the defendant's rights under the Sixth and Fourteenth Amendments are violated where the judge as fact finder engages the jury in a discussion about the jury's verdict before the court has rendered a verdict on the severed counts.

GROUND TWO:    Appellate Counsel was ineffective for failing to raise the substantive issue underpinning Ground One in the State Court of Appeals when the matter was before the court on direct

-5-

appeal in violation of Mr. White's rights under the Constitution's Sixth and Fourteenth Amendments.

GROUND THREE:    The consecutive sentences imposed for two counts of having a weapon under disability , amounting to a total of 10 years, were grossly excessive. Nor did the trial court make findings to justify the imposition of these consecutive sentences. These lapses violated Petitioner's rights under the 5th, 6th, 8th and 14th Amendments.

ECF Dkt. #1 at 6-8. On July 28, 2010, Respondent filed an answer/return of writ. ECF Dkt. #4. On October 8, 2010, Petitioner, through counsel, filed a traverse. ECF Dkt. #7.

## IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final. 28 U.S.C. §2244(d)(1). The AEDPA statute of limitations is not at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion

-6-

requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never

before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

> (1)    whether the petitioner failed to comply with an applicable state procedural rule;
>
> (2)    whether the state courts actually enforced the state procedural sanction;
>
> (3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and
>
> (4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490

-9-

U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## V.    STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28  U.S.C. § 2254 on June 4, 2010, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

-10-

identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

        1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

        2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

    D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different

-11-

from an incorrect or erroneous application of federal law.'

     E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).   The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## VI.    <u>ANALYSIS</u>

Respondent contends that Petitioner procedurally defaulted Grounds One and Two in his petition.  Respondent further contends that the arguments advanced in the petition lack merit.

### A. Procedural Default:  Ground One

Respondent argues that Petitioner's failure to raise his claim in Ground One – the alleged constitutional violation based upon the trial court's communication with the jury foreman – on direct appeal constitutes procedural default.  Although Petitioner concedes that he did not raise the

-12-

underlying claim advanced in Ground One on direct appeal, he argues that the procedural default should be excused based upon the filing of his Ohio App.R. 26(B) application.  Ohio App.R 26(B) provides that "a defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." The court must grant an application for reopening if the applicant demonstrates that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal."  Ohio App. R. 26(B)(5).  To determine whether the applicant has raised a genuine issue of ineffective assistance, Ohio courts employ the two-pronged analysis of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See *State v. Reed*, 74 Ohio St.3d 534, 660 N.E.2d 456, 458 (Ohio 1996).  If the application to reopen is granted, the case proceeds as on initial appeal. Ohio App. R. 26(B)(7).

However, bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim "does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'" *Davie v. Mitchell*, 547 F.3d 297, 312, quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir.2005).  Thus, a Rule 26(B) application "based on ineffective assistance cannot function to preserve" the underlying substantive claim.  *Id.*; see also *Roberts v. Carter*, 337 F.3d 609, 615 (6th Cir.2003) (noting that, "[i]n light of the requirements of Rule 26(B), the court's holding must be read as pertaining to the merits of" the ineffective assistance claim, not the underlying state procedural rule claim).

Accordingly, Petitioner's Rule 26(B) application cannot be construed as raising the substantive claim in Ground One, and because the Ohio courts determined that Petitioner failed to demonstrate a "genuine issue" that his appellate counsel was ineffective for failing to raise that claim, the courts refused to open Petitioner's direct appeal, thereby imposing a procedural bar to consideration of the claim.  As a consequence, the undersigned recommends that the Court find that Petitioner's substantive claim in Ground One is procedurally defaulted.

Therefore, initial review in this case is limited to Ground Two, that is, Petitioner's claim that his counsel was ineffective for failing to raise the claim he advances in Ground One.  However, it is important to note that, if the Court finds that Ground Two – Petitioner's ineffective assistance

-13-

claim– has merit, that could serve as cause to excuse the procedural default of the substantive claim articulated in Ground One.  *Davie* at 312, citing *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).  In other words, the undersigned must consider the merits of Ground Two to determine whether Petitioner's procedural default of Ground One should be excused.

### B.  Procedural Default:  Ground Two

Prior to addressing the merits of Ground Two, this Court must first consider Respondent's argument that Petitioner procedurally defaulted on Ground Two, as well as Ground One.  Although Petitioner properly presented Ground Two – ineffective assistance of appellate counsel for failure to raise Ground One in the state appeal – in his App.R. 26(B) application, he did not raise it before the Ohio Supreme Court on appeal.  Instead, Petitioner raised the substantive claim in Ground One.  Respondent contends that Petitioner's failure to correctly articulate the claim as an ineffective assistance of counsel claim before the Ohio Supreme Court constitutes procedural default.  Petitioner argues that any appeal from the denial of an App.R. 26(B), regardless of the way it is articulated in the memorandum in support of jurisdiction, is necessarily an appeal predicated upon ineffective assistance of appellate counsel.

Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by invoking "one complete round" of the state's appellate review system.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (finding that "one complete round" includes discretionary appeal to state supreme court). Fair presentation also requires that "the same claim under the same theory be presented" for the state court's consideration.  *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir.1987).  Therefore, the failure to present a federal constitutional issue to the state supreme court on discretionary review constitutes procedural default.  *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003).

Here, Petitioner presented his substantive claim in Ground One to the Ohio Supreme Court, not his claim in Ground Two.  The Sixth Circuit recognized the interrelationship and the distinction between a substantive claim and an ineffective assistance of counsel claim based upon the failure to raise the substantive claim in *Davie*, supra.  In *Davie*, Petitioner argued that, because he raised an

-14-

ineffective assistance of counsel claim based upon his appellate counsel's failure to raise a substantive "acquittal-first" claim on direct appeal, his failure to raise that claim on direct appeal should be excused.  The *Davie* Court reasoned:

> The mere fact that Davie's substantive "acquittal-first" claim was included as an underlying assignment of error in the Rule 26(B) application does not, given the comity and federalism concerns implicated in habeas cases, justify reaching the merits of that claim. Although the determination of whether appellate counsel was ineffective for failing to raise a substantive claim may, in some cases, involve an inquiry into the merits of the underlying substantive claim, the fact remains that the two claims are "analytically distinct" for purposes of the exhaustion and procedural default analysis in habeas review. Reaching the merits of the substantive "acquittal-first" claim in this case disregards the operation of two independent and adequate state procedural rules that barred consideration of that claim in state court.

*Id.* at 313.

Although not addressing the precise issue before the Court, the Sixth Circuit has recognized the claims in Ground One and Ground Two as "analytically distinct."  While it is true that any appeal of an App.R. 26(B) application must, by the very nature of the rule, be predicated upon ineffective assistance of appellate counsel, it is nonetheless true that Petitioner failed to present "the same claim under the same theory be presented" for the state court's consideration. See *Pillette, supra.* Based upon the same comity and federalism concerns recognized in *Davie, supra*, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Ground Two.  However, in the event that the Court finds that Petitioner has not procedurally defaulted on Ground Two, or that cause exists to excuse the procedural default, the undersigned will proceed with an analysis of that claim.

### C.  Ground Two - Ineffective Assistance of Appellate Counsel

Ineffective assistance of appellate counsel requires the same showing of deficient performance and prejudice articulated in *Strickland, supra*.  See *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir.2004).  Under *Strickland*, petitioner must show (1) that his or her counsel's performance was constitutionally deficient and (2) that the deficiency prejudiced the defense sufficiently to undermine the reliability of the trial.  *Strickland* at 687.  To be constitutionally deficient, counsel's performance must fall "below an objective standard of reasonableness."  *Id.* at 688.  To satisfy this standard, petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance...." *Id.* at 689.  For ineffective assistance of counsel to cause prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Appellate counsel need not raise every frivolous issue on appeal but only those that would create a "reasonable probability" of a different result. See *Strickland*, 466 U.S. at 694.  In other words, "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir.2001).

Petitioner's ineffective assistance of counsel claim is predicated upon a colloquy between the trial court and Petitioner's trial counsel.  After the trial court accepted the jury's verdicts, a recess was taken. ECF Dkt. #8-4 at 1020.   The trial court returned to the bench, and apologized, explaining that she had forgotten that Counts 9 and 14 were being tried to the bench.   After the trial court announced the verdicts, defense counsel argued that the verdicts were inconsistent with the jury's verdicts.  The trial court responded:

> Well, I had the opportunity to speak with the foreperson of the jury in a very lengthy conversation just now, and she indicated to me that they knew he did it, they just couldn't prove he was the person who actually fired which shots.  So they, for that reason, they arrived at a not guilty verdict, so I think that is consistent."

*Id.* at 1021.   The trial court then permitted the state to put its argument in response on the record. The state observed:

> Your Honor, I was just going to say, the jury was asked to find more than the fact that he had a gun, that he was the one that shot into the house.  So we don't know what they would have – I guess talking to them, you do know what they would have found.

*Id.*  The trial court continued:

> [The jury foreman] said something else interesting to me.  She said, if it had been assault, we would have found him guilty, because we couldn't tell from four people who actually did the shooting.  She said, so if it had been some form of assault, we would have found him guilty, but we couldn't actually prove he did the shooting, so, therefore, we found him not guilty. So I believe that my verdict is consistent.

*Id.*

At the sentencing hearing, the trial court stated that even the jury thought Petitioner "had something to do with" the incident and admonished him not to argue that he had nothing to do with what happened.  *Id.* at __.  Petitioner contends that the conversation between the trial court, as the

-16-

trier of fact on the weapons under disability charges, and the jury, as the trier of fact on the felonious assault and discharging a firearm charges, was presumptively prejudicial.  Because Petitioner's appellate counsel failed to raise this alleged constitutional violation in his direct appeal, he asserts his claim under *Strickland*.

The Eight District Court of Appeals analyzed Petitioner's ineffective assistance of appellate counsel argument as follows:

> {¶ 10}White's initial argument is that the judge's discussion of the jury's verdict with the jury foreperson before reaching her own verdict on the disability charges was improper, presumptively prejudicial and required reversal of his convictions.  First, White cites *Sheppard v. Maxwell* (1966), 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, for the principle that the Constitutions guarantee defendants a fair and impartial fact finder.  He then relies upon *Remmer v. United States* (1954), 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed.2d 654; *State v. Phillips*, 74 Ohio St.3d 72, 1995-Ohio-177, 656 N.E.2d 643, and *State v. Spencer* (1997), 118 Ohio App.3d 871, 694 N.E.2d 191, for the propositions that any private communication, contact or tampering with the finder of fact is presumptively prejudicial and that the state must establish that the error was harmless to the defendant. FN2 White reasons that when the jury returned its not guilty verdicts, the most reasonable inference is that the jury believed the defense witnesses that the victims were trying to frame White and that an unknown person shot up the victims' house. The judge's discussion would necessarily have influenced the judge's deliberations eliminating the inference and inclining the judge toward a finding of guilty on the disability charges.  At the very least there would be an unrebutted presumption of prejudice which should have resulted in a reversal.

> FN2. The court notes that the presumptions in *Remmer* are not universally accepted. In *United States v. Sylvester* (C.A. 5, 1998), 143 F.3d 923, the Fifth Circuit opined that the United States Supreme Court modified *Remmer* in *Smith v. Phillips* (1982), 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78, and *United States v. Olano* (1993), 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508, by holding that allegations of juror impartiality are not necessarily presumed prejudicial, but do require a hearing at which the defendant has the opportunity to prove actual bias. The Sixth Circuit in *United States v. Pennell* (C.A.6, 1984), 737 F.2d 521 read *Smith v. Phillips* as abolishing *Remmer's* presumption of prejudice and shifting the burden of proof from the government to the defendant.  In *State v. Phillips*, 1995-Ohio-177, 74 Ohio St.3d 24, 656 N.E.2d 325, the Supreme Court of Ohio also recognized that the Sixth Circuit has adopted that rule.

> {¶ 12} However, the argument as supported is unpersuasive. All four of the cases cited concern improper influences on the jury, not the judge.  Significantly, White does not cite a single case concerning improper influences on a judge.  That is because a different rule governs a trial to the bench. The presumption is "that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment." *State v. Post* (1987), 32 Ohio St.3d 372, 384, 513 N.E.2d 754. Post is particularly instructive. In that case the Supreme Court of Ohio upheld a death sentence despite the fact that the three-judge panel erred in allowing victim impact statements into evidence.  The supreme court ruled that the record did not affirmatively show that the three-judge panel relied on the victim impact statement in imposing sentence, even though the opinion noted that they had heard such evidence during the mitigation hearing.  The supreme court further stated

-17-

that had such evidence been submitted to a jury, it would have found prejudicial error. See, also *State v. White* (1968), 15 Ohio St.2d 146, 239 N.E.2d 65; *State v. Brewer* (1990), 48 Ohio St.3d 50, 549 N.E.2d 491; and *State v. Bays*, 87 Ohio St.3d 15, 1999-Ohio-216, 716 N.E.2d 1126-admission of "other acts" evidence was not prejudicial because of the judicial presumption.

{¶ 13} Similarly, in the present case the transcript does not affirmatively show that the judge relied upon her conversations with the jury foreperson to reach her decision. Rather, she referred to that conversation to answer defense counsel's objection that her verdict was inconsistent with the jury's verdict.

{¶ 14} Accordingly, the court sees multiple problems with the argument as presented. It is based on easily distinguishable cases, the differences between a jury trial and a bench trial. The argument relies on an area of law marked by conflicting decisions on the presumption of prejudice and the burden of proof in jury influence cases. Most importantly, it runs counter to the very strong presumption that in a bench trial a judge relies only on competent, material and relevant evidence to reach the verdict. In fact, it would not be unreasonable to say that this argument implicitly asks the court to change the law so that the same rules for improper influence apply to judges as well as to juries.

{¶ 15} Instead, appellate counsel chose to use the judge's remarks as the leading point for "sufficiency of the evidence" and "manifest weight" arguments. Following the admonitions of the Supreme Court, this court will not second-guess the reasonable professional judgments of counsel or require an attorney to argue for a change in the law.

*State v. White,* 2009 WL 2462645 at *3-4; ECF Dkt. #4-2 at 175-178.

Petitioner asserts that communication with a jury outside the presence of the defendant or parties to a case by either the judge or court personnel is error, which may warrant a new trial. *Rushen v. Spain*, 464 U.S. 114 (1983); *Remmer v. United States*, 347 U.S. 227 (1954); *Bostic v. Connor*, 37 Ohio St.3d 144, 149 (1988); *State v. Schiebel*, 55 Ohio St. 3d 71, 84 (1990); citing *Rushen*, *supra*. In support of his constitutional claim, Petitioner cites two Ohio courts that have held that such irregularities in the deliberative process constitute structural error. *State v. Marzett*, 191 Ohio App.3d 181, 945 N.E.2d 567 (2010); *State v. Davis*, 2d Dist. No. 2002-CA-43, 2003 Ohio 4839, ¶ 54-55.

Before addressing the merits of the claim asserted in Ground Two, it is important to note that Petitioner contends that this Court should not be afforded the presumption of correctness pursuant to 28 U.S.C. §2254(e)(1) based upon the jury's verdict. Although Petitioner bears the burden of overcoming the presumption, he has made no effort to do so in this case. To the contrary, Petitioner has not demonstrated that the facts, as articulated by the Eight District Court of Appeals, are at odds

-18-

with the trial court's verdict.  It is the verdict of the trial court that was at issue in the direct appeal, and it is the verdict of the trial court that is at issue here.  Moreover, Petitioner has failed to demonstrate that the trial court's verdict and the jury's verdict were inconsistent.  The elements of the weapons under disability charges[2] are not identical to the elements of the charges for which Petitioner was acquitted by the jury.[3]  Furthermore, different fact finders may adjudge the credibility of witnesses differently.  Accordingly, Petitioner's assertion that the facts as articulated by the Eighth District should not be afforded the statutory presumption of correctness has no merit.

The crux of Petitioner's argument is that the trial court, as trier of fact on the weapons under disability charges, was prejudiced by the opinions of the jury in this case.  Because Petitioner's ineffective assistance of counsel claim was adjudicated on the merits in state court, the AEDPA's deferential standard of review applies to that claim.  The proper inquiry here is whether the state court disposition of the ineffective assistance claim was an unreasonable application of clearly established federal law, as determined by the Supreme Court.  See 28 U.S.C. 2254(d)(1).

---

[2]ORC 2923.13, captioned "Having weapons while under disability," reads, in pertinent part:

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: . . .

> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

[3]ORC 2903.11, captioned "Felonious assault," reads in pertinent part, "(A) No person shall knowingly. . . (2) Cause or attempt to cause physical harm to another. . .by means of a deadly weapon or dangerous ordnance.  ORC 2923.161, captioned "Improperly discharging firearm at or into habitation or school safety zone," reads, in pertinent part, " (A) No person, without privilege to do so, shall knowingly. . . . (1) Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual.

-19-

Petitioner analogizes the trial court in this case to a jury in a jury case, susceptible to influence by the judge, court personnel, or other parties.  The weakness in Petitioner's argument is that it assumes that a trial court in a bench trial is governed by the same body of case law as a jury in a jury trial.  In fact, although both parties are charged with a determination of the facts in a case, they are afforded different levels of review on appeal.  In  Ohio, the trial court is entitled to the presumption of regularity, that is, the trial court is presumed to know and follow the law in arriving at its judgment unless it affirmatively appears to the contrary.  *State v. Eley*, 77 Ohio St.3d 174, 672 N.E.2d 640, 1996–Ohio–323.  In other words, in an appeal from a bench trial, Ohio courts presume a trial court relies only on relevant, material, and competent evidence in arriving at its judgment.  *Id.* at 180, 672 N.E.2d 640.

The United States Supreme Court has not addressed the unique facts in this case.  Although Petitioner contends that this matter is governed by the body of case law developed under *Remmer* and its progeny, the more analogous body of case law involves the admission of inadmissible evidence in bench trials.  The United States Supreme Court in *Sinclair v. United States*, 279 U.S. 749, 49 S.Ct. 471, 73 L.Ed. 938 (1929), in addressing a criminal defendant's charge that admission of certain evidence at a bench trial was error, stated:

> In answer, we need only refer to what was said in *The United States v. King*, 7 How. 833, 854, 855 [12 L.Ed. 934]:  "In some unimportant particulars, the evidence objected to was not admissible.  But where the court decides the fact and the law without the intervention of a jury, the admission of illegal testimony, even if material, is not of itself a ground for reversing the judgment, nor is it properly the subject of a bill of exceptions.  If evidence appears to have been improperly admitted, the appellate court will reject it, and proceed to decide the cause as if it was not in the record."

*Id.* at 767, 49 S.Ct. at 477.  In  *Harris v. Rivera*, 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981) (*per curiam*), the Court recognized that the presumption of judicial regularity is basic to bench trials:

> In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.  It is equally routine for them to instruct juries that no adverse inference may be drawn from a defendant's failure to testify; surely we must presume that they follow their own instructions when they are acting as fact finders.

*Id.* at 346, 102 S.Ct. at 465.

-20-

Furthermore, the United States Supreme Court has observed, in analyzing assertions of judicial bias in §2254 actions that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

Here, Petitioner contends that the trial court admitted that her conversation with the jury foreman influenced her verdict on the weapons under disability charges. To the contrary, the trial court did not even suggest that her verdict on the weapons under disability charges were in any way influenced by her discussion with the jury foreman. In response to a motion for reconsideration of her verdict based upon defense counsel's perceived inconsistency in the verdicts, the trial court attempted to explain why the jury acquitted Petitioner. Although the trial court conceded that the conversation took place, she did not concede, nor even intimate, that her verdict was influenced by that conversation. Simply stated, the facts in this case do not present a circumstance where the presumption afforded to bench trials that is firmly rooted in both Ohio and federal law has been rebutted. Therefore, the failure of appellate counsel to raise this issue on direct appeal did not constitute prejudicial error under *Strickland*, and the Eighth District's disposition of the ineffective assistance of counsel claim did not constitute an unreasonable application of clearly established federal law, as determined by the Supreme Court. Accordingly, the undersigned recommends that the Court find that Ground Two has no merit, and that Petitioner may not rely upon a meritorious argument in Ground Two to excuse his procedural default of Ground One.

### D. Ground Three - Disproportionate Sentence

Petitioner dedicates one page of his Traverse to this issue and he cites no case law. The Eighth District analyzed Petitioner's disproportionate sentence argument as follows:

> White next complains that his sentence was so excessive that it constitutes cruel and unusual punishment. He argues that he was not convicted of the felonious assault charges, but that the court appeared to have punished him as though he had been convicted of those counts.
>
> {¶ 18} In *State v. Hairston*, 118 Ohio St.3d 289, 888 N.E.2d 1073, 2008-Ohio-2338, the syllabus states: "Where none of the individual sentences imposed on an offender

-21-

are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." The supreme court explained that cruel and unusual punishment cases "are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person" and that "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." Id. at ¶14, 888 N.E.2d 1073 (internal quotations and citations omitted). When reviewing a cruel and unusual punishment challenge, we look only at each individual sentence, not the "stacking" of individual sentences into an aggregate term. Id. at ¶17, 888 N.E.2d 1073.

{¶ 19} The court merged the various firearm specifications into a single three-year prison term and ordered them to be served prior to and consecutive with a two-year prison term for the first weapon under disability count. The court sentenced White to a five-year prison term on the second weapon under disability count, with that prison term to be served consecutive to all other counts, for a total prison term of 10 years.

{¶ 20} Apart from merging the various one and three-year firearm specifications into a single three-year term of imprisonment, the court had no discretion to order them served concurrent with their underlying offenses. See R.C. 2929.14(E)(1)(a). The prison terms for the firearm specifications were required as a matter of law, so they could not be considered grossly disproportionate.

{¶ 21} We likewise find that the two and five-year terms for the weapon under disability counts were not grossly disproportionate. Having a weapon under disability is a third degree felony. Third degree felonies are punishable with a prison term of one, two, three, four or five years, see R.C. 2929.14(A)(3), so White's two and five-year prison terms were within statutory limits. Neither were these terms so independently lengthy as to be shocking to the community's sense of justice. Eyewitness testimony showed that White precipitated the shootings by warning the victims after the street brawl finished that "it ain't over yet." Evidence demonstrated that White set in motion a series of events that culminated in two separate shooting incidents. Even though the jury found White not guilty of felonious assault, his actions caused the shooting, and 14 bullet holes in the victims' home left no doubt that a shooting occurred. Given these facts, the court's decision to impose two and five-year sentences on the weapon disability counts was not grossly disproportionate.

Petitioner contends that the sentences imposed on the weapons under disability convictions were grossly disproportionate, and that "the trial court [did not] make findings to justify the imposition of these consecutive sentences." Addressing Petitioner's second argument first, a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). "The Court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted).  Claims of state law error are not cognizable in federal habeas corpus "unless such error amounts to a fundamental miscarriage of justice or a violation of the right

-22-

to due process in violation of the United States Constitution." *Cristini v. McKee*, 526 F.3d 388, 897 (6th Cir.2008). Based upon the consecutive sentences imposed in this case, Petitioner has failed to meet that standard here.

Thus, the only question here is whether petitioner's sentence violates the Eighth Amendment. The U.S. Supreme Court has held that the Eighth Amendment does not require strict proportionality between a crime and the sentence.  The Supreme Court has held that only those "extreme sentences that are grossly disproportionate to the crime are prohibited" by the Eighth Amendment's ban on cruel and unusual punishment.  *United States v. Flowal*, 163 F.3d 956, 963-64 (6th Cir.1998) quoting *Harmelin v. Michigan*, 501 U.S. 957, 995-97, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991).  Petitioner has not been subjected to cruel and unusual punishment as his total sentence was not "grossly disproportionate" to the crimes he committed.  Therefore, the undersigned recommends that the Court find that Ground Three has no merit.

**VII.**  **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: March 14, 2012                          */s/ George J. Limbert*
                                              GEORGE J. LIMBERT
                                              UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).